UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM GLEASON,

    Plaintiff,

v.

Case No. 19-cv-11126
Hon. Matthew F. Leitman

CROWN EQUIPMENT CORPORATION,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 27)

In this civil action, Plaintiff William Gleason seeks damages for injuries he allegedly sustained while operating a turret truck that was manufactured by Defendant Crown Equipment Corporation ("Crown Equipment"). Gleason alleges that his injuries were caused by Crown Equipment's negligence and gross negligence in designing the truck, failing to test the truck and its components, and failing to warn of dangers associated with use of the truck. Crown Equipment has now filed a Motion for Summary Judgment. (*See* Mot., ECF No. 27.) For the reasons explained below, that motion is **GRANTED.**

**I**

Gleason initiated this action on April 18, 2019. At that time, Gleason was represented by attorney Wolfgang Mueller. Mueller is a former automotive engineer

1

who has been litigating products liability claims on behalf of injured plaintiffs since 1993.[1]

In the Complaint filed by Mueller, Gleason alleges that he was injured in July 2014 while operating a turret truck designed by Crown Equipment. (*See* Compl., ECF No. 1, PageID.2.) Gleason says that the injury occurred during the course of his employment with Gordon Food Service in Brighton, Michigan. (*See id.*)

Gleason's Complaint contains two counts. The first is captioned "NEGLIGENCE AND BREACH OF IMPLIED WARRANTY." (*See id.*, PageID.3.) The second is captioned "GROSS NEGLIGENCE." (*See id.*, PageID.5.)

In the first count, Gleason alleges that Crown Equipment "was independently negligent and breached implied warranties" in at least the following ways:

a. Negligently failing to design and develop the electrical sensors controlling the speed of the turret truck's vertical movement to eliminate the hazard of a sudden loss of vertical speed control;

b. Negligently failing to utilize established engineering methodologies, such as Failure Mode and Effects Analyses (FMEA), to identify and eliminate foreseeable hazards associated with the design of the product;

c. Negligently failing to test the electrical sensors controlling the speed of the turret truck's vertical movement to eliminate the hazard of a sudden loss of vertical speed control;

---

[1] Mr. Mueller described his experience to the Court during an on-the-record status conference on September 8, 2022. The official transcript of that conference has not yet been prepared. However, the Court has reviewed a rough draft of the transcript. Based upon the rough draft and the Court's own recollection of the hearing, the Court is confident that it has accurately set forth Mueller's statements below.

2

   d. Negligently failing to ensure that the turret truck was fit for its intended uses;

   e. Negligently failing to warn or instruct that the turret truck was susceptible to causing serious injuries in the event of a sudden loss of lift control;

   f. Other acts of negligence that will be discovered through the course of this litigation.

(*Id.*, PageID.4.).

In the second count, Gleason alleges that:

   19.    During the time of the design, manufacture and sale of the turret truck, CROWN had actual knowledge of the defective conditions set forth above, and that there was a substantial likelihood that the defect would cause serious injuries to users, including the same type of injury in this case. Despite such knowledge, CROWN willfully disregarded that knowledge in the manufacture, importation, or distribution of the product.

   20.    Defendant's conduct also constitutes "gross negligence," which is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." MCL 600.2945.

(*Id.*, PageID.5.)

Crown Equipment filed its Answer to Gleason's Complaint in June of 2019, and the parties thereafter conducted discovery into Gleason's claims. They deposed all of Gleason's co-workers who were witnesses to the incident in which he was injured, and Mueller deposed a corporate representative of Crown Equipment. In addition, Mueller consulted with an expert witness. By the time discovery closed,

3

Mueller was confident that he understood both the facts of the case and the technical issues related to the design and testing of the truck.[2]

Mueller ultimately concluded that Gleason did not have a strong case. Mueller reached that conclusion after he learned – through discovery and through his consultations with the expert – that the turret truck is a complex machine with a lot of redundancy. Mueller recognized that Gleason's injury was not caused by a simple sensor failure in the truck, as Mueller had originally believed. Mueller conveyed his view of the case to Gleason. He also informed Gleason that Crown Equipment had offered to settle the case for a relatively small amount of money.[3]

The relationship between Gleason and Mueller broke down at some point thereafter. Gleason wrote an email to the Court expressing his dissatisfaction with Mueller and complaining about the manner in which Mueller had handled his case. After the Court received that email, the Court convened a status conference, read the email into the record, heard from Gleason and Muller, and then granted a motion by Mueller to withdraw as Gleason's attorney. (*See* Dkt. Entry, 9/8/2022.) The Court then gave Gleason sixty days to find replacement counsel. Gleason agreed that that was a sufficient amount of time.

---

[2] All of the information in the paragraph above was relayed to the Court by Mr. Mueller during the status conference on September 8, 2022.
[3] All of the information in this paragraph was also relayed to the Court by Mr. Mueller during the status conference on September 8, 2022.

On November 28, 2022, the Court convened another status conference to receive an update from Gleason about his efforts to secure counsel. Gleason told the Court that he had had "plenty of time" to retain counsel. (Tr., 11/28/2022, ECF No. 26, PageID.68.) He then explained that he had chosen to represent himself because "it's just too important and I don't want anybody speaking for me." (*Id*.) Gleason believed that he could handle the case on his own because, in his view, the case was "easy" and "simple." (*Id*., PageID.70.)

The Court then discussed next steps with Gleason and Crown Equipment's attorney. The Court explained to Gleason that Crown Equipment planned to move for summary judgment on all of Gleason's claims and to argue that the claims failed as a matter of law because Gleason had no expert testimony to support them. (*Id*., PageID.72.) The Court asked Gleason if he wanted an opportunity to seek out and retain an expert witness. (*Id*.) Gleason declined. (*Id*.) He said that he was "happy with the deposition of the expert that Mr. Mueller did." (*Id*.)

Crown Equipment's attorney then clarified that the deposition to which Gleason referred was not an expert deposition. (*See id*., PageID.73-74.) Instead, it was a deposition of a Crown Equipment corporate representative taken under Rule 30(b)(6) of the Federal Rules of Civil Procedure. (*See id*.) Crown Equipment's attorney explained that Crown Equipment's corporate representative "did not offer opinions in his 30(b)(6) deposition." (*Id*., PageID.74.) Crown Equipment's counsel

5

further explained that Mueller had not deposed any of Crown Equipment's experts because (1) the Court's scheduling order contemplated that Crown Equipment would disclose its experts and make them available for deposition only after Gleason disclosed his experts and (2) Gleason never disclosed any experts (because Mueller could not find one that would support Gleason's claims). (*See id.*, PageID.71-72.)

The Court then explained to Gleason the difference between fact witnesses and expert opinion witnesses and again asked Gleason whether he wanted an opportunity to retain an expert witness. (*See id.*, PageID.74-75.) Gleason reiterated that he did "not want to do that." (*Id.*, PageID.75.)

The Court then told Gleason what was going to happen next if he did not retain an expert witness. The Court explained that Crown Equipment's attorney "is going to file a motion where he says to me, among other things, Judge, you should dismiss this case, because Mr. Gleason's claim, whatever it is, depends on expert testimony and Mr. Gleason doesn't have any." (*Id.*) And the Court told Gleason that if Crown Equipment's attorney is "right on that, you could potentially lose this case because you don't have an expert witness." (*Id.*) Gleason told the Court that he understood the situation. (*See id.*) The Court then had one final exchange with Gleason concerning the expert witness issue:

6

>THE COURT: But what I'm offering you now, is time to explore retaining your own experts. If you pass now and you're wrong on your view of the case, passing and not having an expert could end up being fatal to your case, and I don't want you to be misle[d] or caught off guard.
>
>MR. GLEASON: No, I understand that, and I appreciate it.
>
>THE COURT: With that understanding, is it your decision to skip retaining an expert and to move ahead with the next steps?
>
>MR. GLEASON: I myself, yes, will skip the expert parts, yes.
>
>THE COURT: Okay.

(*Id.*, PageID.75-76.)

On January 13, 2023, Crown Equipment filed a Motion for Summary Judgment. (*See* Mot., ECF No. 27.) In that motion, Crown Equipment makes the same argument that was previewed for Gleason at the earlier status conference: namely, that all of Gleason's claims fail as a matter of law because Gleason has no expert testimony to support them. (*See id.*, PageID.109.). Gleason filed a Response to Crown Equipment's motion on February 27, 2023. (*See* Resp., ECF No. 28.) Crown Equipment filed a Reply Brief on March 20, 2023. (*See* Reply, ECF No. 29.)

The Court concludes that it may decide Crown Equipment's motion without a hearing. *See* Local Rule 7.1(f)(2).

7

II

Under Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

III

The Court begins with the first count of Gleason's Complaint, which is captioned "NEGLIGENCE AND BREACH OF IMPLIED WARRANTY." (Compl., ECF No. 1, PageID.3.) As described above, Gleason alleges in this count that Crown Equipment was negligent and/or breach an implied warranty in five different ways. The Court considers Gleason's five theories of liability below.

## A

In Gleason's first two theories of liability, he claims that Crown Equipment negligently designed certain components of the turret truck. More specifically, he alleges that Crown Equipment "negligently fail[ed] to design and develop the electrical sensors controlling the speed of the turret truck's vertical movement to eliminate the hazard of a sudden loss of vertical speed control" and "negligently fail[ed] to utilize established engineering methodologies, such as Failure Mode and Effects Analyses (FMEA), to identify and eliminate foreseeable hazards associated with the design of the product." (Compl. at ¶ 15, ECF No. 1, PageID.4.) In Gleason's response to Crown Equipment's motion for summary judgment, Gleason clarifies that his design defect claims focus, in large part, on the "Access 4 module" and related "sensors." (Resp., ECF No. 28, PageID.152.)

Crown Equipment argues that Gleason's design defect theories fail as a matter of law because Gleason has no expert testimony to support them. (*See* Mot., ECF No. 27, PageID.111.) The Court agrees.

"Michigan has adopted what its courts have come to call the 'risk-utility' test for determining whether a plaintiff has made out a case for a product liability claim based upon a claimed design defect." *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617 (6th Cir. 2001). In order to prevail on a design defect claim under Michigan law, a plaintiff must establish that:

9

    (1) the severity of the injury was foreseeable by the manufacturer;
    (2) the likelihood of occurrence of [the plaintiff's] injury was foreseeable by the manufacturer at the time of distribution of the product;
    (3) there was a reasonable alternative design available;
    (4) the available alternative design was practicable;
    (5) the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and
    (6) the omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Id.* at 617-18.

Expert testimony is generally "required" to demonstrate the existence of a reasonable alternative design that would satisfy the elements of a plaintiff's claim. *Hendrian v. Safety-Kleen Sys.*, 2015 WL 4770966, at *5 (E.D. Mich. Aug. 13, 2015). Expert testimony is especially important in a design defect case where the allegedly defective product -- like the truck and components at issue in this case -- is complex. Indeed, this Court and the Michigan Court of Appeals have repeatedly granted summary judgment in favor of defendants (or upheld the entry of summary disposition in favor of defendants) on similar design defect claims that were not supported by expert testimony. *See, e.g.*, *Lawrenchuk v. Riverside Arena, Inc.*, 542 N.W.2d 612, 614-15 (Mich. App. 1995) (affirming summary disposition in favor of defendant on negligent design claim where plaintiff failed to produce admissible expert testimony)[4]; *Hendrian*, 2015 WL 4770966, at *5 (granting summary

---

[4] The decision in *Lawrenchuk* "has been repeatedly cited for the proposition that expert testimony is required under Michigan law" in order to maintain a design defect claim. *Olson v. Home Depot*, 321 F.Supp.2d 872, 876 (E.D. Mich. 2004).

10

judgment in favor of defendant on negligent design claim where plaintiff failed to produce admissible expert testimony); *Berry v. Crown Equipment Corp.*, 108 F.Supp.2d 743, 756 (E.D. Mich. 2000) ("In the absence of expert testimony concerning reasonableness of the plaintiff's proposed alternative design, a manufacturer is entitled to entry of judgment as a matter of law."); *Eiben v. Gorilla Ladder Co.*, 2013 WL 1721677, at *16 (E.D. Mich. Apr. 22, 2013) ("Because the Court has determined that [plaintiff's alternative-design expert's] testimony is inadmissible, [p]laintiff now has no expert testimony to support his design defect claim, and this lack of evidence entitles [d]efendants to summary judgment on their design defect claim as a matter of law.").

Gleason has not identified any expert testimony that supports the two design defect theories he advances in this case. Nor has he cited any statutes or case law suggesting that he may proceed on these theories without expert testimony. Instead, Gleason offers his own lay assessment as to how the turret truck and sensor were defectively designed and how they could have been designed differently. (*See* Resp., ECF No. 28, PageID.152.) But Gleason's own understanding of the turret truck and sensor design and his personal opinion that the design was defective is not enough. Accordingly, Crown Equipment is entitled to summary judgment on Gleason's two design defect theories.

**B**

The Court next turns to Gleason's theory that Crown Equipment breached its implied warranty of merchantability by "negligently failing to ensure that the turret truck was fit for its intended uses." (Compl. at ¶ 15, ECF No. 1, PageID.4.) Crown Equipment contends that this claim must fail along with Gleason's design defect claim. The Court agrees.

Under Michigan law, "breach of implied warranty and design defect are distinct theories of recovery." *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 524 (6th Cir. 2014). However, where a plaintiff brings claims alleging both theories and where the alleged breach of implied warranty rests upon the allegedly-defective design, the two claims will "involve identical evidence and require proof of exactly the same elements." *Id.* (quoting *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 693 (Mich. 1984)).[5] Under those circumstances, "the failure of [the] design defect claim necessarily dooms [the] implied warranty claim." *Miller v. Ingersoll-Rand Co.*, 148 F. App'x 420, 425 (6th Cir. 2005).

---

[5] This Court has previously recognized that breach of implied warranty and design defect do not always involve the same evidence and the same elements. *See Swartz v. Procter and Gamble Manufacturing Company*, 2018 WL 2239558, at *9 (E.D. Mich. May 16, 2018). "[W]here a plaintiff's implied warranty claim goes beyond alleging a defective design, 'the two causes of action remain separate theories with distinct elements.'" *Id.* (quoting *Sandberg v. Keller Ladder*, 2001 WL 1397290, at *5 (E.D. Mich. Nov. 8, 2001)).

Here, Crown Equipment argues that Gleason's implied warranty requires the same proof as his design defect claim and, like the design defect claim, fails as a matter of law because it is unsupported by expert testimony. (See Mot., ECF No. 27, PageID.115-16, citing *Peak, supra*.) In response, Gleason does not argue that his implied warranty claim is distinct from his design defect claim. On the contrary, his response to Crown Equipment's motion seems to confirm that his implied warranty claim does closely track his design defect claim. In the section of his response addressing the implied warranty claim, he focuses, in large part, on the "design" of the truck and the fact that it has only "one component responsible for safely stopping the cab from hitting the ground at full descent speed." (Resp., ECF No. 28, PageID.153.) The component in question is the "Access 4 module" – which, as noted above, is the focus of his design defect claim. (*Id.*) Because Gleason's breach of implied warranty claim is so closely intertwined with his design defect claim, the failure of the design defect claim – for lack of expert testimony – "dooms [his] implied warranty claim." *Miller*, 148 Fed. Appx. at 425.

## C

The Court next addresses Gleason's claim that Crown Equipment is liable for "negligently failing to warn or instruct that the turret truck was susceptible to causing serious injuries in the event of a sudden loss of lift control." (Compl. at ¶ 15, ECF

13

No. 1, PageID.4.) The Court agrees with Crown Equipment that this claim fails as a matter of law.

The Michigan Legislature has enacted a statute governing failure to warn claims. As relevant here, that statute provides: "In a product liability action brought against a manufacturer or seller for harm allegedly caused by a failure to provide adequate warnings or instructions, a manufacturer or seller is not liable unless the plaintiff proves that the manufacturer knew or should have known about the risk of harm *based on the scientific, technical, or medical information reasonably available at the time the specific unit of the product left the control of the manufacturer*." Mich. Comp. Laws § 600.2948 (emphasis added).

Here, Gleason has not presented any expert testimony concerning the state of the scientific or technical information reasonably available to Crown Equipment when the turret truck left Crown Equipment's control. Nor has he sufficiently explained how he may make the statutorily-required showing concerning the relevant scientific or technical information without expert testimony. Accordingly, Gleason cannot prevail on his failure to warn claim. *See Dow v. Rheem Mfg. Co.*, 2011 WL 4484001, at *22 (E.D. Mich. Sep. 26, 2011) (granting summary judgment on failure to warn claim that was not supported by expert testimony or other evidence concerning the state of information available to the manufacturer when the product in question left the manufacturer's control).

**D**

Gleason's final theory in Count 1 asserts that Crown Equipment breached its duty of care by "negligently failing to test the electrical sensors controlling the speed of the turret truck's vertical movement to eliminate the hazard of a sudden loss of vertical speed control." (Compl. at ¶ 15, ECF No. 1, PageID.4.) This theory of negligence also fails because Gleason has no expert testimony to support it.

"A manufacturer's duty of reasonable care includes a duty of product inspection and testing during and after the course of manufacture as is reasonably necessary to render the product safe for its users." *Taylor v. Wyeth Laboratories, Inc.* 139 Mich. App. 389, 395 (Mich. Ct. App. 1984.) Expert testimony is generally required to support a failure-to-test claim unless a lay juror could observe the product and "reasonably conclude, not only that its design was defective, but also that testing would have disclosed the defect and that it could have been remedied." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (affirming dismissal of failure to test claim due to lack of supporting expert testimony). *See also Avendt v. Covidien Inc.*, 262 F.Supp.3d 493, 521 n.6 (E.D. Mich. 2017) (granting summary judgment on failure to test claim because, among other reasons, "[p]laintiffs have no expert testimony to support a failure to test claim.") Here, Gleason's failure-to-test claim fails as a matter of law because Gleason (1) has no expert testimony to support his claim that Crown Equipment failed to reasonably test the truck and its sensors and

15

(2) has failed to show that a lay person could reasonably conclude that testing would have disclosed the alleged defect and that it could have been remedied.

Gleason counters that a Crown Equipment work order proves that Crown Equipment failed to reasonably test the turret truck. (*See* Resp., ECF No. 28, PageID.163.) The Court disagrees. The work order in question does not address testing and does not mention the "electrical sensors controlling the speed of the turret truck's vertical movement" that Crown Equipment allegedly failed to test. Instead, the work order simply says that the "Cab heater [on the turret truck was] not keeping car warm enough." (*Id.*, PageID.163.) The work order thus does not create a material factual dispute on Gleason's failure-to-test claim, and Crown Equipment is entitled to summary judgment on that claim for the reasons described above.

## IV

The second count of Gleason's complaint seeks to hold Crown Equipment liable for gross negligence. But absent a showing of negligence, a "gross negligence claim must also fail." *Johnson v. Serv. Tool Co., LLC*, No. 2:14-CV-12438, 2015 WL 7760480, at *5 (E.D. Mich. Nov. 30, 2015). Because Gleason has failed to establish an actionable claim for negligence, his second claim for gross negligence also fails as a matter of law.

In response, Gleason argues that Crown Equipment committed gross negligence because it did not put the turret truck "through testing to eliminate vulnerabilities and safety risks." (Resp., ECF No. 28, PageID.155.)  But for the reasons explained above, the Court has concluded that Gleason failed to establish a viable failure to test claim.  Thus, he may not assert a gross negligence claim premised on Crown Equipment's alleged failure to test the truck and its components.

## V

While the Court concludes that Gleason does not have any viable claims against Crown Equipment, the Court feels badly for him and his circumstances. Gleason appears to have suffered a serious and very unfortunate injury.  The Court hopes that Gleason sees significant improvement in his condition as soon as possible.

## VI

For the reasons explained above, Defendant's Motion for Summary Judgment (ECF No. 27) is **GRANTED.**

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 29, 2023, by electronic means and/or ordinary mail.

                                        s/Holly A. Ryan
                                        Case Manager
                                        (313) 234-5126